**In re Frank E. JARECKI, d/b/a Jarecki Industries, Appellant,**

v.

**COMMONWEALTH OF PENNSYLVANIA UNEMPLOYMENT COMPENSATION FUND, Commonwealth of Pennsylvania Department of Revenue, First National Bank of Pennsylvania, S.A. Wagner Agencies, Inc., Stoody Co., County of Erie, Appellees.**

Civil Action No. 94–145 Erie.
Bankruptcy No. 90–788 Erie.

United States District Court,
W.D. Pennsylvania.

Aug. 15, 1995.

Stephen H. Hutzelman, Shapira, Hutzelman, Berlin & May, Erie, PA, for appellant Frank E. Jarecki d/b/a Jarecki Industries.

Raymond A. Pagliari, Dunlavey, Ward & Pagliari, Erie, PA, for appellee Timothy Dabrowski.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

This case comes on as an appeal by Appellant Frank Jarecki d/b/a Jarecki Industries ("Jarecki") from an order of the bankruptcy court granting a motion by Appellee Timothy Dabrowski ("Dabrowski") to compel the sale of certain real estate owned by Jarecki. This Court has jurisdiction pursuant to 28 U.S.C. §§ 158 and 1334. Because we find that the bankruptcy court properly compelled the sale of the subject property, we will affirm.

### I. BACKGROUND

The essential facts of this case are easily gleaned from the parties' stipulation of facts and the relevant documentation submitted to the bankruptcy court. Jarecki, a Chapter 11 Debtor, filed a motion with the bankruptcy court on April 29, 1993 to approve the sale of a 6.1 acre parcel of lake front property free and clear of all liens, claims and encumbrances. The motion proposed sale of the parcel to Jarecki for a sum of ten dollars, subject to higher or better offers. If Jarecki were the winning bidder, the sale would be to a corporation to be formed by Jarecki, the latter holding stock in the corporation as an asset of the bankrupt estate. The motion also proposed that, if Jarecki was the winning bidder, the sale would close within thirty days of incorporation of the new corporation being formed; if another entity was the winning bidder, the sale would close within thirty days of the bankruptcy court's order approving the sale. No contract of sale was attached to or referenced in the motion.

A hearing on the motion was held on May 24, 1993. Two additional bidders (including Dabrowski) were present at the hearing and the bankruptcy court converted the sale to a public auction. Ultimately Dabrowski was the successful bidder, offering to purchase the parcel for $9,500.00. On May 27, 1993 the bankruptcy court entered an order refusing private sale of the property and confirming the public sale.

On June 8, 1993, Jarecki's then attorney, Owen Katz, mailed Dabrowski a draft Motion to Reform Order of Court and an Agreement of Sale. These documents sought to correct certain incidental inaccuracies in the bankruptcy court's May 27 order and to extract from Dabrowski an agreement to indemnify Jarecki for any costs or losses incurred in environmental clean-up of the property.

Meanwhile, Dabrowski had become aware of potential environmental problems on the property through his own investigation. Because of these concerns, Dabrowski called Attorney Katz on June 23, 1993 advising that he did not wish to close and that he had engaged Attorney Pagliari to file a "Motion to Vacate and Set Aside Order Confirming Public Sale of Real Property." Attorney Katz called Attorney Pagliari who confirmed his engagement. Later that same day, Attorney Pagliari faxed to Attorney Katz the proposed motion to vacate and set aside the bankruptcy court's May 27 confirmation order. Attorney Katz objected to the proposed motion because he did not want the proper-

ty's environmental audits to be a matter of public record. Attorney Katz indicated that Dabrowski would not need to file a motion to vacate, inasmuch as he would prepare a proposed consent order vacating the bankruptcy court's May 27, 1993 order and releasing Dabrowski from any claims which the estate might have for his failure to close.

Five days later, Katz faxed Pagliari a proposed Joint Motion to Vacate. However, this motion was never submitted to the bankruptcy court due to intervening circumstances involving the death of one of Dabrowski's family members.

On July 9, 1993, Attorney Pagliari telephoned Attorney Katz and expressed Dabrowski's renewed interest in closing the sale. Jarecki was apparently willing to work toward closing and the parties undertook efforts toward that end. Various documents and correspondence were exchanged between the parties over the next several weeks. Dabrowski undertook a title search which revealed a previously undisclosed lien on the property. By letter dated July 23, 1993, Attorney Katz advised Attorney Pagliari that Jarecki had declared time of the essence for a July 26, 1993 closing but, as an accommodation, would extend the time for closing until August 2, 1993 if the purchase price was received on or before July 26.

Dabrowski tendered full payment for the property on July 23, 1993. Nevertheless, Attorney Katz returned the money by letter dated August 3, 1993, citing Dabrowski's failure to close within the appropriate deadline.

Dabrowski subsequently filed his motion to reform the bankruptcy court's May 27 confirmation order and to compel sale of the property. Jarecki responded that: (a) the property was now needed for the estate to reorganize; (b) the parties had agreed to release Dabrowski from his obligation to purchase; and (c) no new agreement for the purchase of the property had been reached. The bankruptcy court granted Dabrowski's

motion on March 9, 1994 after holding a hearing. The court's rationale for granting the motion was that the May 27 confirmation order was conclusive and could not be changed by the parties absent court approval; time was not made "of the essence" in either the publicized notice of sale or the court's May 27 order; and any delay in closing was at least partly attributable to Jarecki's own actions. It is from this order that Jarecki now appeals.

## II. STANDARD OF REVIEW

 On appeal from a bankruptcy court's final order in a core proceeding,[1] the district court may affirm, modify, or reverse the bankruptcy court's order, or it may remand with instructions for further proceedings. The bankruptcy court's findings of fact, whether based on oral or documentary evidence, may not be set aside unless found to be clearly erroneous. Bankr.Rule 8013. However, the bankruptcy court's conclusions of law are subject to plenary review. *In re Meyertech Corp.*, 831 F.2d 410, 414–15 (3d Cir.1987); *Mellon Bank, N.A. v. Makoroff*, 153 B.R. 155 (W.D.Pa.1993); *In re Metro Communications, Inc.*, 135 B.R. 15 (W.D.Pa. 1991), *rev'd on other grounds*, 945 F.2d 635 (3d Cir.1991).

## III. DISCUSSION

On appeal, Jarecki argues that the bankruptcy court erred in compelling the sale of the subject property. Jarecki contends that the parties reached a binding agreement on June 23, 1993 to rescind the sale. Thus, it is argued, the bankruptcy court's March 9, 1994 order compelling sale was ineffectual in that there was no longer any agreement of sale valid under Pennsylvania law for the bankruptcy court to compel. According to Jarecki, the bankruptcy court should have focused on whether it would approve the June 23, 1993 rescission agreement instead of focusing on whether the original agreement to sell had been breached.

---

1. Core proceedings include, among other things, "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate." 28 U.S.C. § 157(b)(2)(N). It appears undisputed in this case that both the

bankruptcy court's May 27, 1993 order confirming public sale of the subject property and its subsequent March 9, 1994 order compelling sale involve core proceedings. Thus, this Court applies the deferential standard of review set forth in Bankr.Rule 8013, Title 11, U.S.C.A.

■ Jarecki's argument rests on the central assumption that, once an order is entered by the bankruptcy court confirming the sale of the debtor's property, the parties may thereafter deviate from that order through their own extra-judicial agreements. However, it is only upon confirmation by the bankruptcy court that the purchaser in a bankruptcy sale acquires any rights in the subject property. *In re Pizazz Disco & Supperclub, Inc.,* 114 B.R. 104, 107–08 (Bankr.W.D.Pa. 1990), *order aff'd,* No. 90–1163, 1991 WL 331033 (W.D.Pa. June 19, 1991); *In re Rosecrest Enterprises, Inc.,* 80 B.R. 354, 356 (Bankr.W.D.Pa.1987) (citing *In re A.H.R.S. Coal Corp.,* 8 B.R. 455 (Bankr.W.D.Pa.1981) and *In re Blue Coal Corp.,* 59 B.R. 157 (Bankr.M.D.Pa.1986)). *See also In re Silver Bros. Co., Inc.,* 179 B.R. 986, 1007 (Bankr. D.N.H.1995) ("There is no contract for sale of a debtor's assets between parties absent approval by the bankruptcy court.")

■ Moreover, once the bankruptcy court's decree of sale is entered, it is controlling upon the parties. "[T]heir rights and obligations are fixed thereby, and they are not permitted to deviate therefrom. The purchaser [and the seller are] bound by the Order." *In re Pizazz Disco & Supperclub, Inc.,* 114 B.R. at 108. *See also In re Silver Bros. Co., Inc.,* 179 B.R. at 1007 ("The parties to a judicial sale do not have authority to deviate from the provisions of the bankruptcy court order approving the sale."); *In re Winston Inn & Restaurant Corp.,* 120 B.R. 631, 636 (E.D.N.Y.1990) (parties' agreement as to sale of Debtor's restaurant business occurred in context of judicial sale and was therefore binding on the parties as a matter of law); *In re Rosecrest Enterprises, Inc.,* 80 B.R. at 356 (rights and obligations of the parties are fixed by the bankruptcy court's decree of sale and they are not permitted to deviate from the language of the order). Thus, some courts have stated that sales approved by a bankruptcy court are not subject to ordinary state contract law principles:

Sales approved by a bankruptcy court are not simple commercial contractual undertakings between two independent parties. Because the sale of an asset in a bankruptcy estate necessarily impacts parties other than the particular parties to the transaction, judicial sales encompass institutional and policy concerns not involved in ordinary commercial transactions. Application of the ordinary contractual law concerning private party sales transactions is inappropriate in this context ... (citations omitted) ... Concerns of institutional integrity translate into a strong policy of finality in the judicial sale process ...

*In re Silver Bros. Co., Inc.,* 179 B.R. at 1006. *See also In re Chung King, Inc.,* 753 F.2d 547, 551 (7th Cir.1985); *In re Winston Inn & Restaurant Corp.,* 120 B.R. at 636.

■ We consider it unnecessary in the instant case to determine whether or not the evidence establishes an agreement between the parties after May 27, 1993 to vacate the sale of the subject property. We agree with the bankruptcy court's view that "such an oral understanding, even if it could be proved ... would be insufficient to vitiate the confirmation order." (Mem.Opinion of Judge Bentz, p. 9.) The bankruptcy court's May 27 confirmation order was binding on the parties absent a subsequent vacating order by the bankruptcy court or a stay of the confirmation order pending a timely appeal. *In re Silver Bros. Co., Inc.,* 179 B.R. at 1007; *In re Oyster Bay Cove, Ltd.,* 161 B.R. 338, 342 (Bankr.E.D.N.Y.1993). Furthermore, having once entered its order confirming sale, the bankruptcy court would have only limited discretion to set aside that order, e.g. on a finding of fraud, mistake, or some other infirmity which, if known, would have precluded the bankruptcy court's initial approval of the sale. *See Cedar Island Builders, Inc. v. South County Sand & Gravel, Inc.,* 151 B.R. 298, 302 (D.R.I.1993); *In re Matter of F.A. Potts and Co., Inc.,* 93 B.R. 62, 64–65 (E.D.Pa.1988), *aff'd,* 891 F.2d 280 and 282 (3d Cir.1989) (table case). Any other result would undermine the strong policy concerns favoring finality and stability in the judicial sale process.

■ We also agree with the bankruptcy court's finding that Dabrowski did not materially breach the original sales agreement by virtue of his failure to close by August 2, 1993. Although Jarecki's original motion to approve sale of the subject property and the publicized notice of sale both indicated a thirty-day closing period, neither document stated that time was "of the essence" in closing the transaction. More importantly,

the record shows that Jarecki's counsel requested that the bankruptcy judge expressly incorporate a thirty-day closing period in his order confirming public sale of the property. The judge declined to do so and instead deliberately left the issue open.[2] Thus, the May 27 confirmation order does not provide any particular time frame for closing, but merely directs that Jarecki execute and deliver all necessary documents required to transfer title to the property "upon compliance with the terms of sale." (May 27, 1993 Order Refusing Private Sale of Real and/or Personal Property and Confirming Public Sale, at p. 2.) In the absence of a fixed period of time for closing, it is presumed that "a reasonable time" is permitted. *Glover v. Grubbs,* 367 Pa. 257, 259, 80 A.2d 75, 76 (1951); *Reagan v. D & D Builders, Inc.,* 277 Pa.Super. 140, 143, 419 A.2d 700, 702 (1980). Jarecki's unilateral imposition of a July 26, 1993 closing date, subsequently extended to August 2, 1993, was insufficient to alter this "reasonable time" for closing.

Finally, we note that the record supports a finding that the delay in closing was partly the result of Jarecki's own actions. It is undisputed that Jarecki attempted to secure from Dabrowski an additional agreement of indemnification for environmental clean-up costs subsequent to the entry of the bankruptcy court's confirmation order. Dabrowski was not yet represented by counsel at the time of this demand and became concerned over the issue even to the point of considering backing out of the sale. The record indicates that Dabrowski encountered further impediments to closing when his counsel discovered, shortly before the August 2, 1993 deadline, that a previously undisclosed and valid lien existed on the property. The bankruptcy court found that, under the circumstances, Jarecki could not avail himself of the argument that closing was untimely. We take this to be an implicit finding that, under the circumstances, Dabrowski was prepared to close the sale within a reasonable time, but for Jarecki's failure to accept the fully tendered purchase price. We cannot say that such a finding is clearly erroneous, nor do we perceive in it any misapplication of the law.

## IV. CONCLUSION

Based upon the foregoing reasons, the Court will affirm the bankruptcy court's March 9, 1994 order granting Dabrowski's motion for reformation of the May 27, 1993 order and compelling sale of the subject property. An appropriate order follows.

2. The transcript of the judicial sale proceeding contains the following relevant dialogue:

MR. KATZ: Your Honor, just so I understand the procedure. The closing is supposed to be in thirty days. In the event that the winning bidder should be unable to close within thirty days, would we have to come back to Court to get authorization to go to the second highest bidder? Could the Court perhaps provide for that in the order, that in the event that the winning bidder is unable to close in thirty days?

THE COURT: We don't normally anticipate that it's not going to get closed.

[COUNSEL FOR UNSUCCESSFUL BIDDER]: Your Honor, we would withdraw the bids that were made by the unsuccessful bidder and like to have the thing rescheduled. Maybe there wouldn't be any competition next time around.

THE COURT: I think the new buyer is the equitable owner already. We'll cross that bridge when we come to it. Fine. Thank you. And then that concludes our 1:30 matters.

(Transcript of May 24, 1993 proceedings, pp. 18–19.)